324 So.2d 837 (1975)
Margaret MESSINA et al.
v.
Aubrey L. MICHAEL et al.
No. 10455
Court of Appeal of Louisiana, First Circuit.
November 24, 1975.
Rehearing Denied January 12, 1976.
Writ Refused February 17, 1976.
Patrick W. Pendley, Plaquemine, for appellants.
B. C. Bennett, Jr., Marksville, La., for defendant-appellee.
John W. Jewell, New Roads, for third party defendant.
Before SARTAIN, J., and BAILES and PICKETT, JJ. Pro Tem.
BAILES, Judge Pro Tem.
This petitory action concerns the ownership of certain alluvion formed on the eastern *838 bank of the Atchafalaya River in Pointe Coupee Parish, Louisiana. The land in question, which totals 171.30 acres, adjoins the southern boundary of Section 29 and the eastern boundaries of Sections 30, 31, 32 and 33 of Township 2 South, Range 7 East of that parish.
In their petition, plaintiffs claim the ownership of the alluvion through the judgment of possession in the succession proceedings of Peter Grezaffi, the late husband and father respectively of the plaintiffs. Additionally, they aver that the alluvion formed in front of sections 30, 31, 32 and 33, which is plaintiffs' property exclusive of the alluvion, with the alluvion being generally north of defendant's property and on the east end of the said sections. Plaintiffs have pleaded that under the terms of LSA-C.C. Article 509 they are the owners of the alluvion.
Petitioners also aver that the defendant and his vendors in title took possession of about one-half of this alluvion and have removed a fence which separated petitioners' property in Section 30 from defendant's property in Section 29, and further that defendant planted corn on the westerly one-half of the alluvion which is presently being possessed by defendant.
In a supplemental petition, plaintiffs allege that defendant, Aubrey L. Michael, since the filing of the original petition sold the property owned by him to A & M Properties, Inc., and pray that the latter be made a party defendant.
In answer, defendant denies having taken possession of any of the alluvion owned by plaintiffs and asserts the ownership of the alluvion that was fenced and farmed by him.
After trial, the district judge recognized plaintiffs as the owners of Sections 30, 31, 32 and 33, Township 2 South, Range 7 East, which adjoins the alluvion on the east end of these sections. Likewise, the defendant was recognized as the owner of that portion of Sections 26, 27, 28 and 29, Township 7 South, Range 7 East, lying between the levee and the Atchafalaya River. However, as shown by the attached plat prepared by Ralph L. Gagnard, registered land surveyor, Section 29 is the only part of defendant's ownership that is contiguous to the alluvion in question. The trial judge recognized the alluvion as being enclosed within the area of land whose corners are designated by the letters z - x - y on the said plat.
Under the authority of Jones v. Hogue, 241 La. 407, 129 So.2d 194 (1960), and Oliver v. Milliken & Farwell, Inc., 290 So.2d 738 (La.App.1st Cir. 1974), the trial court declared plaintiff the owner of 48.05 per cent of the alluvion, being the area enclosed by the letters w - x - y or 82.32 acres, and declared defendant the owner of 51.95 per cent, or 88.98 acres, being the area enclosed by the letters z - x - w, as per plat. Plaintiff appealed. We affirm.
Although plaintiffs, through counsel, in oral argument and in brief, argue they have a prescriptive title under Civil Code Article 3474 to all of the alluvion, there is no prescription whatever pleaded in their petition, or otherwise in the record.
Under the pleadings of both plaintiffs and defendant ownership of the alluvion was clearly put at issue. The basis for plaintiffs' contended (in brief and oral argument) prescriptive title (10 year acquisitive) under Civil Code Article 3474 is that Peter Grezaffi acquired the alluvion by boundaries described as
"* * * bounded north by Scott Finlay Gustafson and George Mercier, on the east by Middle Bayou, south by land of Isaac Hagan, and west by Atchafalaya River * * *." (Article 1 of plaintiff's petition)
In Article 2 of their petition, as amended and supplemented, plaintiffs, in effect, allege defendant is owner of certain land north of and contiguous to their property.
*839 In the description of the property as set out in this Article 2, the following is found,
"* * * together with the accretions thereto and less derelictions caused by the Atchafalaya River and is bounded on the north by Franklin Barbre, on the south by Peter Grezaffi, in part and in part by the Atchafalaya River; on the west by the Atchafalaya River and on the east by Atchafalaya River Levee in part and by Peter Grezaffi, * * *."
In its answer, defendant denied the allegations of plaintiffs' ownership of the entire alluvion. If plaintiffs are relying for ownership of the whole, or any part of the alluvion apart from LSA-C.C. Article 509, namely, a prescriptive title under LSA-C.C. Article 3474, or otherwise, it was necessary for plaintiffs to have pleaded such prescription. Stated another way, it may be said that the alluvion herein is not a basic part of plaintiffs' title except as it may have been acquired under LSA-C.C. Article 509. The record fully substantiates the fact that by the meander line of 1830 of the east bank of the Atchafalaya River both plaintiffs' and defendant's property fronted on the river. Insofar as ascertainable from the record these parties and their ancestors in title never effected a division of this alluvion. If plaintiffs are claiming title to the whole of the alluvion by reason of possession of such sufficiency to support a prescriptive title it was necessary that they plead such prescription.
The following statutory provisions are controlling:
LSA-C.C. Article 3458:
"The prescription by which the ownership of property is acquired, is a right by which a mere possessor acquires the ownership of a thing which he possesses by the continuance of his possession during the time fixed by law."
LSA-C.C. Article 3463:
"Courts can not supply the plea of prescription."
LSA-C.C. Article 3464:
"Prescription may be pleaded in every stage of a cause, even on the appeal, but it ought to be pleaded expressly and specially before the final judgment.
LSA-C.C.P. Article 927, in part, states:
"The objections which may be raised through peremptory exception include, but are not limited to, the following:
(1) Prescription;
* * * * * *
The court cannot supply the objections of prescription and res judicata, which must be specially pleaded. * * *."
LSA-C.C.P. Article 2163:
"The appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record.
"If the ground for the peremptory exception pleaded in the appellate court is prescription, the plaintiff may demand that the case be remanded to the trial court for trial of the exception."
See Kenner v. Larrabee, 17 La.App. 602, 136 So. 916, on page 917 (1st Cir. 1931), wherein this court stated:
"Plaintiff, in his brief, discusses the question of prescription, but, as we find no pleas of any kind presented here or in the lower court, we cannot consider it."
In view of the above authorities, we cannot consider the argument of plaintiffs addressing the question of prescription.
We find that the plaintiffs' property description which recites only that its western boundary is the Atchafalaya River is not sufficient, standing alone, to convey to them the entirety of the alluvion. The defendant's property description also contains language of similar import which establishes *840 the river as its western boundary. The legal consequences of the formation of this land area by the changed course of the Atchafalaya River are primarily controlled by Civil Code Articles 509 and 516 and the case law emanating therefrom, not by the title of the affected riparian owners. Those Civil Code Articles provide, to-wit:
Art. 509. "The accretions, which are formed successively and imperceptibly to any soil situated on the shore of a river or other stream, are called alluvion.
The alluvion belongs to the owner of the soil situated on the edge of the water, whether it be a river or stream, and whether the same be navigable or not, who is bound to leave public that portion of the bank which is required by law for the public use."
Art. 516. "If an alluvion be formed in front of the property of several riparian proprietors, the division is to be made according to the extent of the front line of each at the time of the formation of the alluvion."
The trial court relied upon the cases of Jones v. Hogue, 241 La. 407, 129 So.2d 194 (1960) and Oliver v. Milliken & Farwell, Inc., 290 So.2d 738 (La.App. 1st Cir. 1974) in concluding that the alluvion should be divided on a frontage to frontage basis. In Jones, the court, after reviewing the conflicting body of jurisprudence which had arisen concerning the subject, said:
"As has been said by this court, the ownership of alluvion is a legislative donation to the riparian proprietor without which it would be public property, and consequently it is a pure gratuity by the state to the riparian proprietor. See Heirs of Delord v. City of New Orleans, supra. It follows that the state clearly intended that the apportioning of alluvion formed in front of the property of several riparian owners should be made in such a manner as to prevent inequities as far as possible; or, stated somewhat differently, that in making such an apportionment the alluvion should be divided equitably as nearly as possible so as not to give one proprietor an advantage over the other.
"In sum, when alluvion formed in front of the estates of riparian owners is to be divided, two objects, insofar as possible, are to be attained: (1) Each owner should receive a fair proportion of the area of the alluvion, and (2) each should receive a fair proportion of the new frontage on the water. Because of the varying conditions which obtain in different cases, no one method of effecting a division can be prescribed which will not in some instances result in substantial inequities. The courts can therefore do no more than take each case as it is presented and order an apportionment by the method which will most nearly attain these two objects and do justice between the parties to the particular case."
Applying these principles to the case at bar, we find no error in the judgment of the trial court. The drawing prepared by Ralph L. Gagnard, a registered land surveyor, shows that the division was made by determining that the plaintiffs originally had 48.05 per cent of the total frontage of the two tracts on the river before the forming of the alluvion, and that the defendant had 51.95 per cent of that frontage. The alluvion was then divided according to those percentages and a line of separation drawn from the point where Sections 29 and 30 meet, to the river. The result of this division was that the plaintiff and defendant would receive 82.32 and 88.98 acres respectively. Under this division, their new river frontage is almost of identical length. We think the judgment is entirely equitable and is in harmony with those principles set out in Jones, supra.
Accordingly, the judgment of the trial court is affirmed. All court costs are to be paid by plaintiffs.
Affirmed.
*841